UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAI TRUONG<br><br>                    Petitioner,<br><br>v.<br><br>KRISTI NOEM, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, ATTORNEY GENERAL; TODD LYONS, ACTING DIRECTOR OF IMMIGRATION AND CUSTOMS ENFORECEMENT; JESUS ROCHA, ACTING FIELD OFFICE DIRECTOR, SAN DIEGO FIELD OFFICE, CHRISTOPHER LAROSE, WARDEN OF OTAY MESA DETENTION CENTER,<br><br>                    Respondents. | Case No.: 25-cv-2597-JES-MMP<br><br>**ORDER:**<br><br>**(1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; and**<br><br>**(2) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT**<br><br>**[ECF Nos. 1, 3]** |

      Before the Court are Petitioner Tai Truong's ("Petitioner" or "Truong") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and Motion for a Temporary Restraining Order. ECF No. 1, ("Pet."); ECF No. 3, ("TRO"). The Petition and TRO were filed on October 1, 2025. *Id*. On that same day, Petitioner also filed a Motion for

Appointment of Counsel pursuant to 18 U.S.C. § 3006A(a)(2). ECF No. 2. On October 3, 2025, the Court granted the Motion for Appointment of Counsel and set the briefing schedule for the Petition and TRO. ECF No. 4. Respondents filed their Response on October 8, 2025. ECF No. 7, ("Res."). Petitioner filed his Traverse on October 9, 2025. ECF No. 8, ("Trav."). And on October 10, 2025, the Court held a hearing on the Petition and TRO. ECF No. 9. For the reasons set forth below, the Court **GRANTS** the Writ of Habeas Corpus and **DENIES AS MOOT** the Motion for Temporary Restraining Order.

## I.  BACKGROUND

Petitioner is a citizen of Laos who is currently detained in Otay Mesa Detention Center. Pet. Ex. A ¶ 5. In 1979, Petitioner came to the United States and became a lawful permanent resident soon after. *Id.* In 1996, Petitioner was convicted of forced oral copulation in violation of California law and sentenced to 15 years to life in prison. Res. Exh. 1 ¶ 5. In October 2015, Petitioner was released from California criminal custody in and immediately taken into U.S. Immigration and Customs Enforcement ("ICE") custody. Pet. Ex. A ¶ 5. Due to his criminal conviction, Petitioner was placed into removal proceedings and ordered removable by an Immigration Judge in December 2015. *Id.* ¶ 2. Petitioner remained in ICE custody for the next five months while it attempted to deport him to Laos. *Id.* ¶ 3. On March 4, 2016, Petitioner was released from ICE's custody. *Id.* For the past nine years, Petitioner successfully attended all check in appointments and had no new criminal convictions. *Id.* ¶ 4. On July 12, 2025, Petitioner was pulled over and arrested by ICE agents. *Id.* ¶ 5. Petitioner did not receive advance notice of this arrest, an interview, or a chance to contest his re-detention. *Id.* On September 24, 2025, Petitioner was informed that ICE had obtained travel documents from Laos and that he would soon be deported. *Id.* ¶ 6.

On September 8, 2025, by and through his attorney Michael Hawkins, Petitioner filed a motion pursuant to Cal. Penal Code § 1473.7 to vacate his 1996 criminal conviction in California Superior Court. *Id.* ¶ 7. A hearing on that motion took place on October 2, 2025. Trav. at 2; ECF No. 7-2 ("Res. Ex. 2") at 15. Had the California Superior Court

1  vacated his conviction, Petitioner intended to immediately file a motion to vacate and
2  reopen his immigration proceedings. Pet. ¶ 8. However, Petitioner's motion in California
3  Superior Court was denied, which foreclosed his ability to take such action in Immigration
4  Court. Trav. at 2; Res. Ex. 2 at 15.

5      In his Petition, Truong asserts three claims: (1) procedural due process prevents
6  Petitioner's removal during the pendency of his motion to reopen his removal proceedings
7  ("Claim 1"); (2) ICE failed to comply with its own regulations to re-detain him and he
8  should, therefore, be released ("Claim 2"); and (3) ICE cannot remove him to a third
9  country without adequate notice and an opportunity to be heard ("Claim 3"). Pet. at 2. In
10 his Traverse, Truong withdraws his request for a TRO and habeas relief with respect to
11 Claims 1 and 3. Trav. at 2. Claim 1 was withdrawn in light of his denied motion in
12 California Superior Court. *Id.* Petitioner withdrew Claim 3 in reliance on the Government's
13 representation that it does not seek to remove him to a third country, has obtained a travel
14 document from Laos, and anticipates Petitioner will be removed to Laos by November 1,
15 2025. *Id.*; ECF No. 7-1 ("Res. Dec.") ¶¶ 11-12. Accordingly, the Court narrows its analysis
16 only to Claim 2.

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview

//

1  of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Habeas corpus is "perhaps the most important writ known to the constitutional law ... affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

### III. DISCUSSION

#### A. Jurisdiction

As a threshold matter, the Court finds that it has jurisdiction to hear the Petition for Writ of Habeas Corpus.

Respondents assert that the Court does not have jurisdiction to hear this claim because it stems from the Attorney General's decision to execute a removal order against Truong. Res. at 9-11. However, Petitioner does not seek relief from this Court from a decision to execute a removal order. Rather, he challenges solely the propriety of his detention, not the core proceedings involved in his removal. Pet. at 8-9. Therefore, this argument has no bearing on this Petition.

Moreover, the Supreme Court's holding in *Zadvydas* directly contradicts Respondents' argument. *See* 533 U.S. at 687-88. There, the Supreme Court rejected the application of 8 U.S.C. § 1252 to limit judicial review of post-removal-period detentions under 8 U.S.C. § 1231(a). *Zadvydas*, 533 U.S. at 687-88. It held "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Id*. Just as other courts in this district have found in similar matters, the Court has jurisdiction to hear Petitioner's claim that his detention is unlawful under 28 U.S.C. § 2241. *See Alegria Palma v. LaRose*, 25-cv-1942-BJC-MMP, ECF No. 14 (S.D. Cal. Aug. 11, 2025); *Mendez Los Santos v. LaRose*, 25-cv-2216-TWR-MSB, ECF

//

No. 14 (S.D. Cal. Sept. 4, 2025) (granting petition by minute order); *Rokhifirooz v. LaRose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal Sept. 15, 2025).

### B. Truong's Re-detention

The Court finds that the Government failed to comply with its own regulations governing re-detention of noncitizens which, in turn, violated Petitioner's due process rights. Accordingly, the Court grants Truong's Petition.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of a suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

#### 1. Revocation of Truong's Release

The detention and release of noncitizens subject to a final order of removal is governed by 8 U.S.C. § 1231. This statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id*. § 1231(a)(3).

8 C.F.R. §§ 241.4 & 241.13 authorize the revocation of such noncitizens' supervised release. Under both regulations, there are four bases under which ICE may do so. (1) If the noncitizen fails to comply with the conditions of their release. 8 C.F.R. § 241.4(l)(1); *id.* § 241.13(i). (2) If authorized by the Executive Associate Commissioner. *Id.* § 241.4(l)(2). (3) If "in the opinion of [a district director]: (i) The purposes of release have been served;

(ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id.* (4) Finally, if due to changed circumstances, ICE determines that there is a significant likelihood that the noncitizen may be removed in the reasonably foreseeable future. *Id.* § 241.13(i)(2).

Petitioner argues that under 8 C.F.R. § 241.4(l), ICE may only re-detain a noncitizen, such as Truong, on supervised release after an interview and a chance to contest a re-detention. Pet. at 8. The Court disagrees with Petitioner's position because the plain language of both Section 241.13(i) and Section 241.4(l) state that "[u]pon revocation [not prior to], the alien will be notified of the reasons for revocation of his or her release." Accordingly, the Court finds that prior notice of the Government's intent to revoke a noncitizen's release is not required under its regulations.

Respondents raise two arguments in support that the revocation of Truong's release was lawful. First, it was effectuated pursuant to 8 C.F.R. § 241.4. Res. at 11. Second, Truong is properly detained under 8 U.S.C. § 1231(a). Res. Ex. 2 at 12; Res. at 11. The Court addresses Respondents' arguments in turn.

### a. 8 C.F.R. § 241.4.

As explained above, 8 C.F.R. § 241.4 provides the Government with three bases to revoke a noncitizens' release. *See* 8 C.F.R. §§ 241.4(l)(1)-(2). Here, apart from ICE's Warrant of Removal/Deportation ("Warrant") and Notice of Revocation of Petitioner's Order of Supervision ("Notice"), Respondents fail to clearly articulate the regulatory source of authority it invoked to revoke Truong's release. Res. Ex. 2 at 9, 12; s*ee generally* Res.

The Court finds the Warrant to be problematic. The Warrant was signed by ICE Field Office Director Patrick Divver. *See* Res. Ex. 2 at 9. ICE Regulations expressly authorize someone in Divver's position to revoke a noncitizen's release. 8 C.F.R. § 241.4(l)(2). However, the Warrant does not state any applicable criteria under 8 C.F.R. §

241.4(l)(2) that Divver used to determine ICE was authorized to revoke Truong's release. *Id.*; s*ee* Res. Dec. ¶ 9; Res. Ex. 2 at 9. More troubling is that the Government represents to have issued Petitioner's Warrant on September 1, 2025. Res. Dec. ¶ 9. While this date is visible on the Warrant's top right corner, Divver's signature is dated July 14, 2025. Res. Ex. 2 at 9. The Court was unable to address this discrepancy with Respondents at the hearing to allow them to inform the court which of their policies and procedures permit their agents to execute an arrest under the authority of an unsigned arrest warrant. As the Courts current inquiry is confined to the Fifth Amendment's Due Process Clause—and not the Fourth Amendment—it will now turn to the Notice.

      The Court find two issues with ICE's Notice. First, the Notice is overly vague. *See* Res. Ex. 2 at 12. The Notice advises Petitioner of ICE's determination that, pursuant to 8 C.F.R. § 241.4, he will be kept in its custody. *Id*. This determination was based on "a review of [Truong's] immigration and criminal history." *Id.* Any allegations that Petitioner engaged in conduct that violate conditions of his release are conspicuously absent from the Notice. *See id*. The Notice also does not indicate which criteria under 8 C.F.R. § 241.4 is implicated and supports that the Government was justified in re-detaining Petitioner. As discussed below, after being detained, noncitizens are provided "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). It would be impossible for a noncitizen to challenge and successfully overcome ICE's reasons for detaining them, if they are never informed of those reasons. The Court finds that the Notice's contents fail to provide any, let alone sufficient, notice of the Government's basis for revoking Truong's release.

      Second, had the Notice indicated a valid justification for his re-detention, it was still provided to Petitioner on October 7, 2025. *Id.* That is eighty-seven (87) days after Truong was re-detained, and six (6) days after the filing of this Petition. *See* Pet. The Government does not speak to why it took so long for Truong to be provided Notice. *See generally* Res. It also does not argue whether an eighty-seven (87) day delay may reasonably be construed to mean "[u]pon revocation." *Id.*; 8 C.F.R. § 241.4(l)(1). The Court finds that certainly

does not. After-the-fact determinations in an attempt to justify a noncitizen's re-detention cannot cure the Government's blatant procedural errors. Especially when notice is provided in an egregious and untimely manner such as this.

The Court does acknowledge that the Government has secured a travel document from Laos and anticipates Petitioner's departure in less than a few weeks. Res. Dec. ¶ 12. Therefore, Respondent could very well, and peripherally attempt to, argue that due to changed circumstances, there is a significant likelihood that Truong may be removed in the reasonably foreseeable future. Res. at 7-8. Asserting such an argument, to the Court, would seem to be an appropriate ground to revoke one's release. *See* 8 C.F.R. § 241.13(i)(2). However, to be clear, the Court is not making a finding that when the government acquires travel documents from a country it intends to deport a noncitizen to, substantiates a change in circumstances for purposes of 8 C.F.R. § 241.13(i)(2). The Government's Response, Warrant, and Notice is void of any claim that it relied on 8 C.F.R. § 241.13 to re-detain Petitioner. Therefore, that issue is not before the Court.

Thus, the Court finds Respondents' proffered justifications, contained in the Response, Warrant, and Notice, to be conclusory and lack any requisite specificity to support a finding that Truong's re-detention was lawful.

### b. 8 U.S.C. § 1231(a)(2) and *Zadvydas*

Respondents rely on 8 U.S.C. § 1231(a)(2) and *Zadvydas* to buttress its second argument that the revocation of Truong's supervised release was proper. Upon reviewing the statute's plain language, the Court finds that it requires the mandatory detention of noncitizens during the removal period. *See* 8 U.S.C. § 1231(a)(2)(A). The "removal period" is defined as a period of ninety (90) days following a noncitizen being issued a final order of removal. *Id.* §§ 1231(a)(1)(A)-(B). The removal period may be extended beyond ninety (90) days, during which the noncitizen may remain detained, if they fail to act in good faith in securing documents necessary to, or otherwise obstruct, their departure. *Id.* § 1231(a)(2)(C).

//

1    Here, Petitioner's final order of removal was issued on December 1, 2015, and he
2 was placed on supervised release on March 4, 2016. Res. at 1; Res. Dec. ¶¶ 6-7. Since the
3 issuance of Petitioner's final order of removal, an entire decade has elapsed. Respondents
4 do not allege that Petitioner's conduct would justify an extension of his removal period
5 under 8 U.S.C. § 1231(a)(2)(C). The Court, therefore, finds that Truong's removal period
6 suspended when he was released in March 2015. Thus, 8 U.S.C. § 1231(a) has no bearing
7 on whether Respondents were authorized to revoke Truong's release.

8    Respondents aver that according to *Zadvydas*, a six-month period of post-removal-
9 period detention of noncitizens subject to a final order of removal "is presumptively
10 reasonable pending efforts to obtain travel documents, because the noncitizen's assistance
11 is needed to obtain the travel documents." *Id*. at 13; *see* 533 U.S. at 683, 689, 699.
12 Respondents contend that under its interpretation of *Zadvydas*, its recent efforts justify the
13 revocation of Petitioner's release. Res. at 13. Respondents claim they are working
14 expeditiously to effectuate Petitioner's removal. *See* Res. Dec. ¶ 12. This is evidenced
15 through representations that the necessary travel document from Laos has been obtained,
16 and Petitioner's anticipated departure will occur on or before November 1, 2025. Res. at 7,
17 12-13; Res. Dec. ¶ 12.

18   The Court generally agrees with Respondents' interpretation of *Zadvydas*, for the
19 purposes of assessing the propriety of a noncitizen's detention during the post-removal-
20 period—*whose release was properly revoked*. However, that is not the case here. The
21 Court's inquiry is into the propriety of revocation of Truong's release, not the duration of
22 his detention. Thus, the Court is unpersuaded by the Respondent's second argument.

23   In sum, the Government failed to articulate the basis, pursuant to either 8 C.F.R. §§
24 241.4 or 241.13, under which it revoked Truong's release. As a result, the Court finds that
25 the Government violated its own regulations because it lacked authority to re-detain
26 Truong.
27 //
28 //

**2. Notice of Revocation and Informal Interview**

Promptly after re-detaining a noncitizen on supervised release, ICE must notify them of the basis for the revocation of their release and conduct an informal interview. *Id.* § 241.4(l)(1)-(3); *Id.* § 241.13(i)(3). The informal interview "afford[s] the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.4(l)(1); *Id.* § 241.13(i)(3).

Petitioner argues that the Government failed to comply with its own regulations, which violated his due process rights, because after being re-detained ICE failed to promptly notify him of the basis for revocation of his supervised release. He argues further that ICE also did not conduct an informal interview, during which he could have contested his re-detention. Pet. at 9; Trav. at 5. Respondents argue that any regulatory duties owed under 8 C.F.R. § 241.4(l) were satisfied because on October 7, 2025, ICE provided Petitioner a Notice. *Id.*; *see* Res. Ex. 2 at 12.

ICE arrested Petitioner on July 12, 2025. Pet. Ex. A ¶ 5; Res. Dec. ¶ 8. Despite being required to notify Petitioner, "[u]pon revocation," of the reasons for his release being revoked, ICE did not provide him with a Notice until October 7, 2025—*eighty-seven days* after he was re-detained. 8 C.F.R. § 241.4(l)(1); *see* Res. Ex. 2 at 12. The regulation's language is plain and clear. *See* 8 C.F.R. § 241.4(l)(1). "Upon revocation" cannot possibly be interpreted to mean nearly three months later. As discussed above, the Notice is defective as it is overly vague and fails to provide Petitioner with any of the Government's contentions, which he must overcome when challenging his re-detention. Provision of notice in such a manner substantially prejudices Petitioner, compelling him to contest his re-detention blindly. Accordingly, the Court finds that the Government's conduct, with respect to the notice requirement, falls substantially short of its regulatory duties mandated under 8 C.F.R. § 241.4(l)(1).

//
//
//

Respondents fail to address whether Truong's informal interview—which provides noncitizens with an opportunity to contest their detention—was conducted. In light of this omission, the Court finds that Respondents failed to comply with its duties under 8 C.F.R. § 241.4(l)(1) because Truong was not provided with an informal interview.

Government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003). Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 169-170 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp.3d 383, 387 (D. Mass. 2017); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025). Here, ICE's provision of its Notice to Truong nearly three months after detaining him and its failure conduct an informal interview gravely violated Truong's due process rights, depriving him both of notice and a meaningful opportunity to be heard. *See Mathews,* 424 U.S. at 335.

In sum, the Government failed to follow its own regulations in re-detaining Petitioner by failing to: (1) state an adequate basis to revoke Petitioner's supervised release pursuant to 8 C.F.R. § 241.4(l); (2) provide timely Notice of Revocation of Petitioner's Order of Supervision; and (3) provide Petitioner with a "prompt" informal interview, which prevented him from contesting his revocation, as required under 8 C.F.R. § 241.4(l)(1). In doing so, the Government violated Petitioner's constitutional due process rights. Accordingly, Petitioner's habeas petition is **GRANTED** and Petitioner is ordered **RELEASED**.

C. **Temporary Restraining Order**

Having ruled on the Petition on the merits, the Court declines to apply the *Winter* factors to determine whether to issue a TRO. Thus, the Court **DENIES AS MOOT** the Motion for Temporary Restraining Order.

//

## IV. CONCLUSION

For the reasons stated above:

(1) Petitioner's Writ of Habeas Corpus is **GRANTED**;

(2) Petitioner's Motion for Temporary Restraining Order is **DENIED AS MOOT**;

(3) Respondents are **ORDERED** to immediately release Petitioner from custody, under the same conditions as previously imposed;

(4) At the October 10, 2025 hearing, the Parties were **ORDERED** to file a Joint Status Report, no later than 5:00 p.m. on October 14, 2025, to confirm that the Petitioner has been released;

(5) At that same hearing, Respondents were **ORDERED** to file a Status Report in the event they intend to re-detain Petitioner;

(6) The Parties have complied with the Court's orders.
The October 14th Joint Status Report states that Petitioner was released from custody on October 10, 2025. ECF No. 11.
On October 1, 2025, Respondents filed a Status Report in which they indicate its intent to execute Petitioner's removal order no later than October 22, 2025. ECF No. 12;

(7) In the event Petitioner seeks further habeas relief arising from the Government's conduct related to its future execution of the removal order, Petitioner must file a new Petition.

(8) The Clerk of Court is **DIRECTED** to close this suit.

**IT IS SO ORDERED.**

Dated: October 22, 2025

Honorable James E. Simmons Jr.
United States District Judge